# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DION W. H.**, | Case No. 6:17-cv-63-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**, | |
| Defendant. | |

Robert A. Baron and Kathryn Tassinari, HARDER WELLS BARON & MANNING, PC, 474 Willamette Street, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Lisa Goldoftas, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Dion W. H. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for disability

insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed,

the decision of the Commissioner is reversed and remanded for further proceedings.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

Plaintiff applied for Disability Insurance Benefits on February 2, 2010, alleging a disability onset date of January 1, 2008. AR 138-44. Plaintiff's application was denied initially and on reconsideration, AR 89-98, and a hearing was held before Administrative Law Judge

("ALJ") Mary Kay Rauenzahn on September 14, 2012, AR 50. The ALJ denied Plaintiff's claim

on October 4, 2012. AR 20-43, and the Appeals Council denied review, AR 1-7.

Plaintiff filed a Complaint in federal court and, on July 16, 2015, based on a stipulation

of the parties, United States District Judge Michael J. McShane reversed the ALJ's decision and

remanded the case for further proceedings. AR 1105-07. ALJ Rauenzahn conducted a hearing on

remand on May 6, 2016. AR 1051. On June 9, 2016, the ALJ denied Plaintiff's claim for

benefits. AR 1023-49. The Appeals Council again denied review, making the ALJ's decision the

final decision of the agency. On January 16, 2017, Plaintiff initiated this action seeking review of

the ALJ's decision. ECF 1.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

> 1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
>     §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
>     significant mental or physical duties done or intended to be done for pay
>     or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
>     such work, she is not disabled within the meaning of the Act. 20 C.F.R.
>     §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
>     substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At Step One, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period between his alleged onset date of January 1, 2008 and his date last insured of December 31, 2011. AR 1029. At Step Two, the ALJ found that Plaintiff has the following severe impairments: cervical spondylosis; gout; chronic pain; degenerative joint disease of the left wrist; degenerative joint disease of the left knee; hypertension; cyclothymic disorder; post-traumatic stress disorder ("PTSD"); personality disorder; and alcohol dependence. AR 1030. At Step Three, the ALJ found that Plaintiff, through his date last insured, did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1031.

The ALJ then determined Plaintiff's residual functional capacity ("RFC"). The ALJ concluded:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Moreover, the claimant can lift and/or carry 25 pounds occasionally, and 10 pounds frequently. The claimant can sit for six hours, and stand for six, in an eight-hour workday, with

normal breaks. The claimant can understand, remember, and carry out simple, routine instructions that can be learned in 30 days or less. The claimant should do isolated work with no public contact, occasional coworker contact with no group tasks, and occasional supervisor contact. The claimant can occasionally reach overhead bilaterally. The claimant can never climb ladders, ropes, or scaffolds, but he can occasionally climb stairs and ramps, stoop, and crouch. The claimant can never kneel or crawl. The claimant must avoid workplace hazards, such as unprotected heights and dangerous machinery. The claimant's work must allow for most lifting to be performed with his dominant right upper extremity, with the left non-dominant upper extremity used only to assist the right. The claimant is limited to work in a low stress occupation, defined as one with only occasional changes in work setting and work duties, occasional simple work-related decision-making, and no conveyor belt paced work.

AR 1033-34.

At Step Four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 1042. At Step Five, considering Plaintiff's RFC, age, education, and work experience, the ALJ concluded that through Plaintiff's date last insured there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. AR 1042. The ALJ concluded, therefore, that Plaintiff was not disabled at any time from January 1, 2008, through December 31, 2011. AR 1044.

## DISCUSSION

Plaintiff objects that the ALJ erred in her consideration of the opinions of three examining psychologists, Dr. Gardin, Dr. Kirkendall, and Dr. Eckstein. Plaintiff also argues that the ALJ erred in failing to credit a Department of Veterans Affairs ("VA") decision awarding Plaintiff 100% unemployability. Plaintiff further argues that the ALJ erred in her consideration of lay evidence. Finally, Plaintiff argues that the Commissioner failed to meet her burden of proving that Plaintiff retains the ability to perform "other work" in the national economy.

## A. Medical Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164; *see also Morgan v. Comm'r*, 169 F.3d 595, 603 (9th Cir. 1999) ("The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity."). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ

may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43.

### 1. Dr. Gardin

John Gardin, Ph.D., a VA consulting psychologist, examined Plaintiff on September 1, 2009. AR 444-53. Dr. Gardin concluded that Plaintiff had PTSD with signs and symptoms that resulted in significant deficiencies in work, family relations, judgment, thinking, and mood. AR 453. Dr. Gardin concluded that without medication management, Plaintiff would be totally impaired occupationally and socially. *Id*. Dr. Gardin recorded a score of 21 out of 30 on the mini mental status exam, indicating possible depression with cognitive impairment. AR 452. Dr. Gardin assigned a global assessment of functioning ("GAF") score of 40. AR 453.

For four reasons, the ALJ gave little weight to Dr. Gardin's opinion regarding Plaintiff's functioning and GAF score. First, the ALJ explained, Dr. Gardin's opinion was based largely on Plaintiff's own self-reporting of symptoms, which the ALJ had already disregarded.[1] Second, the ALJ found that Dr. Gardin appeared to have ignored Plaintiff's admission that he was working at the time of the evaluation, and that the amount of work he was doing was limited only by Plaintiff's ability to find work. Third, the ALJ noted that Dr. Gardin recommended appropriate

---

[1] Plaintiff does not appeal the ALJ's finding with respect to Plaintiff's subjective symptom reporting.

medication management, which Plaintiff and other treating sources have noted in fact improve Plaintiff's mood and functioning. Finally, the ALJ noted that there was no evidence in the record to support Dr. Gardin's GAF score, which indicated that Plaintiff had some impairment in reality testing or communication. Because Dr. Gardin was a non-treating examining physician, if Dr. Gardin's opinion was uncontradicted, the ALJ was required to provide "clear and convincing" reasons for rejecting it. If Dr. Gardin's opinion was contradicted by that of another physician, the ALJ was required to provide only "specific, legitimate reasons" that were "supported by substantial record evidence."

Defendant argues that Dr. Gardin's opinion conflicted with that of Dr. Schmechel (*see* AR 439-44) and Michael R. Villanueva, PsyD (*see* AR 671-76). The opinions of Dr. Gardin and Dr. Schmechel differ with respect to their conclusions regarding Plaintiffs' functioning. For instance, Dr. Schmechel assigned a GAF score of 55, AR 443, while Dr. Gardin assigned a score of 40, AR 453. In doing so, however, Dr. Schmechel expressly noted: "The difference between the prof[f]ered GAF and that given by Dr. Gardin refers to the fact that []evaluation and conclusions are based on currently reported [activities of daily living ("ADL")] and the neuropsychological testing. It does not take into account the posttraumatic stress disorder. I would certainly defer to Dr. Gardin as far as assessing the limitations resulting from that." AR 443. Thus, the opinions of Dr. Gardin and Dr. Schmechel are not contradictory with respect to Plaintiff's general level of functioning.

Dr. Gardin's report also assigned a score of 21 out of 30 on the Folsein Mini-Mental Status Examination, which Dr. Gardin noted indicated "possible depression with cognitive impairment." AR 452. The government notes that Dr. Villanueva, another examining physician, found that Plaintiff's "[n]europsychologic test findings are sensitive to effort," that "[t]here were

some hints of less than full effort at times early on" in the evaluation, and thus that Dr.

Villanueva interpreted "any findings on standardized testing that fall below normal limits . . .

with great cautions," as such findings may not necessarily indicate Plaintiff's "true cognitive

compromise." AR 673. Dr. Villanueva found "no reliable findings of memory difficulties" and

"no reliable indicators of cognitive impairment." AR 674. Dr. Schmechel similarly concluded

that Plaintiff's neuropsychological testing failed "to show significant TBI residuals or cognitive

disorder," but was instead "most consistent with inattention, personality, or the PTSD noted by

Dr. Gardin." AR 442. Dr. Schmechel also noted that certain cognitive findings were "probably

not valid due to lack of good effort." AR 442. The Court concludes that Dr. Gardin's report is

not contradicted by that of Dr. Villanueva or Dr. Schmechel on this matter either. Thus, the ALJ

was required to offer "clear and convincing" reasons for disregarding Dr. Gardin's opinion.

With respect to the ALJ's first reason given, it is generally the case that"[a] physician's

opinion of disability 'premised to a large extent upon the claimant's own accounts of his

symptoms and limitations' may be disregarded where those complaints have been 'properly

discounted.'" *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885

F.2d 597, 605 (9th Cir. 1989)).[2] This issue is especially complicated in the context of psychiatric

evaluations, which "may appear subjective," but "will always depend on part on the patient's

_____

[2] The Ninth Circuit has not yet determined whether this constitutes a clear and convincing reason, rather than a specific and legitimate reason, to disregard a doctor's opinion. *Compare id*. (concluding that this was a specific and legitimate reason to disregard doctor's opinion); *with Costa v. Comm'r*, 525 F. App'x 640, 641 (9th Cir. 2013) (finding that ALJ provided sufficient reasons, under clear and convincing standard, for rejecting treating physician's opinion, including that "the opinion was based in part on Costa's self-reporting, which the ALJ found not reliable"); *Belknap v. Astrue*, 364 F. App'x 353, 355 (9th Cir. 2010) ("The ALJ also gave clear and convincing reasons for rejecting Dr. Bates's assertion that Belknap had PTSD, stating that Dr. Bates's PTSD assertion was based not on a diagnosis of PTSD but on Belknap's self-reporting, did not describe Belknap's symptoms, and was not supported by Dr. Bates's treatment notes.").

self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 568

F.3d 1040 (9th Cir. 2017). "Thus, the rule allowing an ALJ to reject opinions based on self-

reports does not apply in the same manner to opinions regarding mental illness." *Id*. In *Buck*, the

Ninth Circuit concluded that because a psychiatric evaluation involved "a clinical interview and

a mental status evaluation" in addition to a review of the claimant's self-reports, the doctor's

"partial reliance on [the claimant's] self-reported symptoms [was] . . . not a reason to reject his

opinion." *Id*. In this case, Dr. Gardin conducted a clinical interview and a mental status

evaluation. As such, Dr. Gardin's partial reliance on Plaintiff's self-reported symptoms was not a

clear and convincing reason to disregard his opinion.

The second reason the ALJ gave for giving little weight to Dr. Gardin's opinion was that

Dr. Gardin appeared to ignore Plaintiff's statement that he was working at the time of the

evaluation, and was limited only by his ability to find work. The ALJ concluded that Dr.

Gardin's acknowledgement of this statement was inconsistent with Dr. Gardin's own ultimate

conclusion with respect to Plaintiff's functioning and GAF score. Internal inconsistencies

"constitute relevant evidence" to an ALJ's resolution of "conflicts in medical testimony, and

resolving ambiguity." *Morgan v. Comm'r*, 169 F.3d 595, 603 (9th Cir. 1989). An internal

discrepancy between a finding of functioning and other recorded observations "is a clear and

convincing reason for not relying on the doctor's opinion on" that matter. *Bayliss v.

Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("The ALJ rejected Dr. Tobin's statement that

Bayliss could stand or walk for only fifteen minutes at a time. Dr. Tobin took clinical notes on

the same day that he made this statement. These notes, and the doctor's other recorded

observations and opinions regarding Bayliss's capabilities, contradict Dr. Tobin's statement

assessing Bayliss's ability to stand or walk.").

Plaintiff argues that Dr. Gardin was aware that Plaintiff had continued to work, but also noted that Plaintiff had lost many jobs due to interpersonal conflicts. It is true that Dr. Gardin noted that many of Plaintiff's past jobs, since his discharge from the military, were lost due to conflicts with supervisors or co-workers, though Dr. Gardin also noted that many ended due to the economy. With respect to Plaintiff's then-relevant work, Dr. Gardin noted that Plaintiff had "stated that he could work more if there was more work for him to do." AR 448. Plaintiff argues that the ALJ overstates Plaintiff's abilities, and that Plaintiff requires significant help from his family with everyday tasks, has lost interest in activities he once loved, and continues to have interpersonal conflict. Plaintiff argues that his major impediment is his difficulty in getting along with others. The Court concludes that the ALJ's finding of an internal inconsistency between Dr. Gardin's note that Plaintiff would have continued to work if he could find the work, and his conclusion with respect to Plaintiff's overall level of functioning, is supported by the record. This was therefore a clear and convincing reason to discount Dr. Gardin's opinion.

The third reason the ALJ gave for disregarding Dr. Gardin's opinion was that Dr. Gardin recommended appropriate medication management, which Plaintiff and other treating sources have noted help to improve Plaintiff's mood and overall functioning. Dr. Gardin opined that Plaintiff's "PTSD signs and symptoms have resulted in significant deficiencies in work, family relations, judgment, thinking and mood, and that without medication management he would be totally impaired both occupationally and socially." AR 453. Dr. Gardin's statement does not necessarily imply that Plaintiff would not be severely limited even with appropriate medication management, and thus is not inconsistent with a finding a low level of functioning. Therefore, this was not a clear and convincing reason to disregard Dr. Gardin's opinion.

Finally, the ALJ noted that there was no evidence in the record to support Dr. Gardin's GAF score, which indicated that Plaintiff had some impairment in reality testing or communication. Neither party provides argument or evidence addressing this reason given by the ALJ. Because the Court concludes that the ALJ provided at least one clear and convincing reason to give little weight to Dr. Gardin's opinion, the ALJ did not err.

**2. Dr. Kirkendall**

Allan Kirkendall, Ph.D., another VA psychologist, examined Plaintiff on February 22, 2010. AR 369-80. Dr. Kirkendall reviewed Dr. Gardin's evaluation and had no major changes in either content or conclusions between Dr. Gardin's report and his own. AR 371. Dr. Kirkendall therefore concluded that Plaintiff's PTSD had not increased in severity between the time of Dr. Gardin's report and Dr. Kirkendall's. *Id*. Dr. Kirkendall noted that in 2010 Plaintiff had been fired from a job after threatening his employers, and that at the time of the evaluation, Plaintiff was not looking for work and had concluded that "he simply cannot get along with other people. His goal is simply to stay to himself and hopefully by doing so stay out of legal trouble so that he can raise his 10-year-old son whom he has custody of." AR 371. Dr. Kirkendall concluded that Plaintiff's overall employment history demonstrated that his PTSD-related anger results "in a marked inability to maintain employment." AR 371. According to Dr. Kirkendall, Plaintiff "is not capable of working in any situation that involves any level of interaction with other people who are not themselves veterans." *Id*. In short, Dr. Kirkendall found that Plaintiff's PTSD rendered him "unemployable." *Id.* The ALJ gave little weight to Dr. Kirkendall's opinion, concluding that it was inconsistent with Plaintiff's own reported work activities, his ability to manage his household and take care of his son, and with the opinion of Dr. Schmechel.

As Dr. Kirkendall himself noted, there are no major differences in either the content or conclusions of his report and that of Dr. Gardin. AR 371. The Court concludes that, for the same reasons as discussed above, Dr. Kirkendall's opinion is not inconsistent with the opinions of Dr. Schmechel or Dr. Villanueva. As such, the ALJ was required to provide clear and convincing reasons for giving little weight to Dr. Kirkendall's opinion.

The ALJ concluded that Dr. Kirkendall, like Dr. Gardin, appeared to ignore Plaintiff's own statements to both Dr. Gardin and Dr. Kirkendall regarding his activities, which included working. For the reasons discussed with respect to Dr. Gardin, this is a clear and convincing reason to disregard a doctor's opinion, and it is supported by the record in this case.

The ALJ also found that Dr. Kirkendall's opinion was inconsistent with Plaintiff's ability to be the primary caregiver of his young child, which included numerous activities consistent with basic work activities. As discussed, an internal inconsistency is a valid, clear and convincing reason to disregard a medical opinion if it is supported by the record. Dr. Kirkendall's finding regarding unemployability, however, was based largely on Plaintiff's inability to interact appropriately with others, to be supervised, and, more than anything, to control his anger. Thus, Plaitiff's ability to take care of his son and do certain household tasks is not inconsistent with Dr. Kirkendall's findings. As such, this was not a valid reason to disregard Dr. Kirkendall's opinion.

Finally, the ALJ gave as an additional reason to give little weight to Dr. Kirkendall that Dr. Kirkendall's report was inconsistent with that of Dr. Schmechel. For the reasons already discussed, the Court concludes that this assertion is not supported by the record. Because, however, the ALJ provided at least one clear and convincing reason to disregard Dr. Kirkendall's report, the ALJ did not err.

### 3. Dr. Eckstein

Plaintiff also objects to the ALJ's decision to give little weight to the opinion of Judith Eckstein, PhD. *See* AR 989-1001. Dr. Eckstein evaluated Plaintiff on February 22, 2013, and concluded that Plaintiff's prognosis for future employment was poor due to his mental impairments, assigning a GAF score of 42. AR 997. Dr. Eckstein indicated that Plaintiff had several marked limitations spanning the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. AR 999-1001.

The ALJ gave little weight to Dr. Eckstein's opinion for several reasons. First, the ALJ stated that Dr. Eckstein, although noting that she reviewed Dr. Schmechel's evaluation, did not mention that Dr. Schmechel had found Plaintiff provided less than full effort during testing, or Dr. Schmechel's conclusion that objective findings were within normal limits, with no reliable evidence of a TBI. The ALJ also found that Eckstein provided a "brief and cursory" summary of Dr. Villanueva's findings, but failed to mention the fact that Dr. Villanueva found no evidence of memory difficulties, or the results of a test Dr. Villanueva administered to measure malingering. The ALJ noted that Dr. Eckstein similarly failed to mention that Dr. Villanueva provided no work-related limitations. Next, the ALJ noted that although Plaintiff completed highly skilled work until at least February 2010, Dr. Eckstein opined that Plaintiff's disability began in approximately 1998. The ALJ ultimately concluded that Dr. Eckstein's report was inconsistent with the opinions of Dr. Schmechel and Dr. Villanueva, and that Dr. Eckstein's report "appear[ed] to constitute advocacy on behalf of the claimant, rather than an opinion based on objective criteria." AR 1040. The ALJ also seems to take issue with the fact that Dr. Eckstein's evaluation of Plaintiff took place more than one year after Plaintiff's date last insured, and was an "apparent rebuttal to" the ALJ's original decision in Plaintiff's case. AR 1040.

The Ninth Circuit has held that "[t]he opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status . . . is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam." *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996). But, the Ninth Circuit has also stated that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Taylor v. Comm'r*, 659 F.3d 1228, 1232 (9th Cir. 2011) (quoting *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996)). Because that Dr. Eckstein's report relates to Plaintiff's condition before the expiration of his insured status, the Court concludes it is not proper to reject Dr. Eckstein's opinion on the ground that Dr. Eckstein evaluated Plaintiff after that date.

Additionally, although an ALJ may properly reject a doctor's opinion if there is evidence in the record that the doctor acted as an advocate in preparing the opinion, *see Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992), there is no evidence in the record to support this conclusion in this case. Despite the fact that Plaintiff obtained Dr. Eckstein's report after the ALJ's first decision in this case, and may theoretically have done so for purposes of the litigation, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), *as amended* (Apr. 9, 1996). An ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Id*. Because there is no "evidence of actual improprieties" in this case, it was improper for the ALJ to reject Dr. Eckstein's opinion in part on the grounds that it constituted advocacy on Plaintiff's behalf.

For the reasons discussed above with respect to Dr. Gardin and Dr. Kirkendall, the Court concludes that, contrary to the ALJ's express finding, Dr. Eckstein's report is not inconsistent

with the reports of Dr. Schmechel or Dr. Villanueva. Dr. Schmechel explicitly deferred to Dr. Gardin's findings on PTSD-related deficiencies in functioning, and Dr. Villanueva similarly evaluated primarily cognitive impairment. As such, the ALJ was required to provide "clear and convincing" reasons to disregard Dr. Eckstein's opinion.

The ALJ took issue with the fact that Dr. Eckstein did not mention Dr. Schmechel's findings that Plaintiff provided less than full effort during testing, and that objective findings were within normal limits, with no reliable evidence of a TBI. As discussed, Dr. Eckstein primarily evaluated and opined on Plaintiff's PTSD and related symptoms, while Dr. Schmechel primarily evaluated Plaintiff for TBI and other cognitive issues. Thus, Dr. Schmechel's report was not entirely relevant to Dr. Eckstein's analysis, and Defendant cites no authority suggesting that one evaluating physician must mention every finding of previous medical reports in his or her own report. Dr. Eckstein did note, however, contrary to the ALJ's suggestion, that Dr. Schmechel found "[n]o evidence of traumatic brain injury." AR 995. Dr. Eckstein also noted Dr. Schmechel's conclusion that test results from Dr. Schmechel's evaluation were "most consistent with inattention, personality disorder or the PTSD noted by Dr. Gardin." AR 995. Although Dr. Eckstein did not specifically mention "less than full effort," Dr. Eckstein did discuss Dr. Schmechel's resultant conclusion from her observation of less than full effort—*i.e.*, that the results of certain tests administered were likely affected by "inattention, personality disorder," or PTSD.

The ALJ similarly suggested that Dr. Eckstein did not properly consider the report of Dr. Villanueva. Specifically, the ALJ stated that Dr. Eckstein failed to mention that Dr. Villanueva found no evidence of memory difficulties, did not discuss the results of a test Dr. Villanueva administered to measure malingering, and did not mention that Dr. Villanueva provided no

work-related limitations for Plaintiff. Again, as an initial matter, Defendant points to no authority to suggest that Dr. Eckstein was required to mention each specific finding discussed in earlier evaluations of Plaintiff. Furthermore, although Dr. Eckstein did not specifically discuss testing administered by Dr. Villanueva partway through his evaluation of Plaintiff which "suggest[ed] that [Plaintiff] was not able to put forth full effort on standardized testing measures," AR 673, Dr. Eckstein did note Dr. Villanueva's finding that there were "some hints of less than full effort at times early on" in the evaluation. AR 673. Dr. Eckstein, in her conclusions, explained that "[w]hile there may be some discrepancy between [Plaintiff's] self-report and evaluation findings that remark on his lack of full disclosure or effort put out in testing, these characteristics are consistent with [Plaintiff's] personality traits of being uncooperative at times and less than disclosing." AR 997. Dr. Eckstein explained that "these traits are further confirmation of [Plaintiff's] inability to maintain appropriate behavior, which further relates to his potential unemployability." AR 997.

The ALJ also notes that Dr. Eckstein did not mention the fact that Dr. Villanueva found no evidence of difficulty with memory. It is not entirely correct, however, to say that Dr. Villanueva found no evidence of memory difficulties. In fact, Dr. Villanueva concluded: "Memory scores are below normal limits," but noted that this finding should be "interpreted with caution" in light of his finding of less than full effort being put forth (AR 673)—a fact which, as discussed above, Dr. Eckstein did mention. Second, Plaintiff reported to Dr. Eckstein having difficulty with short-term memory, and indicated that he is easily distracted and frequently loses items. AR 994. In a check-box evaluation, however, Dr. Eckstein indicated that Plaintiff was "Not Significantly Limited" in "The ability to remember locations and work-like procedures," or "The ability to understand and remember very short and simple instructions." AR 999. Dr.

Eckstein indicated that Plaintiff was "Moderately Limited" only with respect to "The ability to understand and remember detailed instructions." AR 999. The Court concludes that the mere fact that Dr. Eckstein did not mention Dr. Villanueva's specific findings on memory is not a clear and convincing reason to reject Dr. Eckstein's opinion.

Finally, the ALJ stated that Dr. Eckstein did not mention the fact that Dr. Villanueva did not provide any work-related limitations. As discussed, Dr. Eckstein's report addressed a variety of symptoms that Dr. Villanueva's did not. The Court concludes this is not a clear and convincing reason to disregard Dr. Eckstein's opinion.

Finally, the ALJ noted that although Plaintiff continued working until at least February 2010, Dr. Eckstein opined that Plaintiff's disability began in approximately 1998. The ALJ provides no further explanation about why this is a reason to disregard Dr. Eckstein's report. Defendant argues that an ALJ may properly reject a physician's opinion if it is so extreme as to be implausible, citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Plaintiff notes that although Dr. Eckstein did not explain this statement, Dr. Eckstein seemed to be referring to Plaintiff's psychiatric hospitalization fifteen years before Dr. Eckstein's evaluation of Plaintiff in 2013, which Dr. Eckstein noted in her report. AR 992. Dr. Eckstein indicated that Plaintiff has been in counseling through the VA ever since that event. Thus, it is not implausible for Dr. Eckstein to conclude that this was the onset of at least some of Plaintiff's psychological issues.[3] Dr. Eckstein does not opine that, as early as that hospitalization, Plaintiff became unemployable. Thus, the Court concludes that this is not a clear and convincing reason to disregard Dr. Eckstein's report.

_____

[3] Additionally, Plaintiff reported to Dr. Villanueva in 2010 that he had experienced depression over the past ten years. AR 671.

**B. VA Rating Decision**

The ALJ acknowledged the VA's award of benefits to Plaintiff. The ALJ gave "some weight" to the VA's evaluation, but, for two reasons, did not fully credit it. AR 1040. First, the ALJ noted that VA medical sources did not take into consideration the claimant's activities, which included work and activities consistent with the ability to perform basic work tasks. Second, the ALJ noted that VA regulations instruct the agency to resolve doubt in a veteran's favor, and Social Security Administration regulations do not. The ALJ concluded that this "divergence in Agency procedures represents a material difference between VA and SSA proceedings regarding the respective evidentiary burden." AR 1040.

"Although a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "[A]n ALJ must ordinarily give great weight to a VA determination of disability." *Id.* (noting the "marked similarity between the[] two federal disability programs"). "Because," however, "the VA and SSA criteria for determining disability are not identical . . . the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record. *Id.* In light of the Ninth Circuit's holding in *McCartey*, the ALJ's bare conclusion that a "material difference" exists between VA and SSA proceedings is not a persuasive, specific, and valid reason for giving less weight to the VA's disability rating of Plaintiff.

The ALJ's second proffered reason, however, is a persuasive, specific and valid one. As discussed above, the ALJ properly gave little weight to the opinions of Dr. Gardin and Dr. Kirkendall, two VA physicians, on the grounds that they failed adequately to take into consideration Plaintiff's own statements about his work activity. The ALJ properly relied on

these same reasons to give little weight to the VA's rating of Plaintiff which relied on the opinions of Dr. Gardin and Dr. Kirkendall.

## C. Lay Witness Evidence

Plaintiff also objects to the ALJ's decision to give little weight to the opinions of two lay witnesses, Chris Odegaard and Donna Hoisington. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) (quoting *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir.1993) (alteration in original)).

### 1. Chris Odegaard

Mr. Odegaard, a friend and former coworker of Plaintiff, reported that Plaintiff raised his son, cooked complete meals on a daily basis, went out daily, shopped for food in stores about once per week, went fishing every other weekend in the summer, socialized with fellow veterans and took his son to social activities two to three times per week, and regularly went to the VFW, VA hospital, and to the Boys and Girls Club. Odegaard wrote that Plaintiff received help in raising his son from school, the Boys and Girls Club, and from family. AR 205-12. Odegaard also indicated that Plaintiff mistrusts neighbors and strangers, keeps to himself, and avoids crowds. AR 209. Odegaard wrote that Plaintiff does not get along well with authority figures and

does not handle stress or changes in routine well. AR 210-11. Odegaard wrote that Plaintiff has had to curtail physical activity and is prevented from working as much as he otherwise would.

The ALJ gave little weight to Mr. Odegaard's report because the ALJ concluded that the activities Mr. Odegaard reported that Plaintiff was able to take part in were inconsistent with disabling functional limitations. Plaintiff argues that he receives help raising his son, and that he no longer volunteers at the Boys and Girls Club. *See* AR 75-76. Plaintiff also argues that his major impediment is his inability to get along with others. Regardless of the fact that Plaintiff now no longer volunteers at the Boys and Girls Club, the ALJ found that Mr. Odegaard's report was inconsistent because it both noted that Plaintiff did such volunteer activities and opined that Plaintiff was unable to work. The Court concludes that the ALJ adequately provided germane reasons to discount the lay testimony of Mr. Odegaard, and thus did not err.

### 2. Donna Hoisington

Donna Hoisington, Plaintiff's sister, wrote a letter about Plaintiff's functioning in May 2016. AR 1252-53. Ms. Hoisington reported that Plaintiff had become distant, depressed, anti-social, stressed, angry, and anxious, and that his physical health had declined. Ms. Hoisington reported that Plaintiff was unable to be supervised and did not do well with people telling him what to do. Ms. Hoisington also wrote that, at that point, she was raising Plaintiff's son. The ALJ concluded that Ms. Hoisington's opinion of Plaintiff's limitations was inconsistent with Plaintiff's reported activities prior to his date last insured, December 31, 2011. The ALJ also found that Ms. Hoisington's opinion was inconsistent with the opinion of Dr. Schmechel. Finally, the ALJ noted that Ms. Hoisington's statement was made more than four years after Plaintiff's date last insured.

Plaintiff notes that although Ms. Hoisington wrote her letter in May 2016, she expressly described Plaintiff's condition "[o]ver the last two decades or so." AR 1252. Although this is

true, the time between Ms. Hoisington's letter and the period she was opinion on may still be a relevant consideration. Plaintiff also argues that Ms. Hoisington's report does not conflict with Dr. Schmechel's report, because Dr. Schmechel ruled out a cognitive disorder but did not address Plaintiff's PTSD-related limitations. For the reasons discussed above, the Court agrees with Plaintiff that Ms. Hoisington's letter describing Plaintiff's functioning is not inconsistent with the report of Dr. Schmechel, who evaluated Plaintiff only for symptoms of cognitive disorder or a TBI, but deferred to Dr. Gardin's findings with respect to the limiting effects of Plaintiff's PTSD. Nonetheless, the ALJ's statement that Ms. Hoisington's opinion was inconsistent with Plaintiff's reported activities prior to his date last insured—the relevant time period—is a valid reason for discounting a lay witness statement.

## D. Plaintiff's Ability to Perform Other Work in the National Economy

For the reasons discussed above, the Court has concluded that the ALJ failed to provide clear and convincing reasons for giving little weight to the medical opinion of Dr. Eckstein. Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to

determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635

F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court.

*Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for

the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal
> error, such as failing to provide legally sufficient reasons for
> rejecting evidence. If the court finds such an error, it must next
> review the record as a whole and determine whether it is fully
> developed, is free from conflicts and ambiguities, and all essential
> factual matters have been resolved. In conducting this review, the
> district court must consider whether there are inconsistencies
> between the claimant's testimony and the medical evidence in the
> record, or whether the government has pointed to evidence in the
> record that the ALJ overlooked and explained how that evidence
> casts into serious doubt the claimant's claim to be disabled. Unless
> the district court concludes that further administrative proceedings
> would serve no useful purpose, it may not remand with a direction
> to provide benefits.
>
> If the district court does determine that the record has been fully
> developed and there are no outstanding issues left to be resolved,
> the district court must next consider whether the ALJ would be
> required to find the claimant disabled on remand if the improperly
> discredited evidence were credited as true. Said otherwise, the
> district court must consider the testimony or opinion that the ALJ
> improperly rejected, in the context of the otherwise undisputed
> record, and determine whether the ALJ would necessarily have to
> conclude that the claimant were disabled if that testimony or
> opinion were deemed true. If so, the district court may exercise its
> discretion to remand the case for an award of benefits. A district
> court is generally not required to exercise such discretion,
> however. District courts retain flexibility in determining the
> appropriate remedy and a reviewing court is not required to credit
> claimants' allegations regarding the extent of their impairments as
> true merely because the ALJ made a legal error in discrediting
> their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation

marks omitted).

As Plaintiff notes, the ALJ stipulated that the limitations Dr. Eckstein assessed would render Plaintiff disabled. AR 1063. Concluding that the ALJ failed to provide sufficient reasons to discredit Dr. Eckstein's opinion is not equivalent, however, to finding that that opinion should be fully credited. Although this case has already been remanded once, the Court concludes that a remand for further proceedings consistent with this opinion is proper in this case. Upon review, the record as a whole is not free from conflicts and ambiguities, and the Court cannot conclude that further administrative proceedings would serve no useful purpose.

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

DATED this 11th day of June, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge